UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SPEEDWARE MOTORSPORTS, a Washington Limited Liability Corporation,<br><br>Plaintiff,<br><br>v.<br><br>RETAIL INFORMATION SYSTEMS, a Texas partnership<br><br>Defendants. | No.  C05-2041Z<br><br>ORDER |

This matter comes before the Court on Defendant Retail Information Systems' ("RIS") motion to compel arbitration, docket no. 3. Having reviewed Defendant's motion, Plaintiff's brief in opposition, docket no. 4, the reply thereto, docket no. 6, and all supporting declarations and exhibits, the Court enters the following Order.

**BACKGROUND**

This case involves purchase and sale agreements between the buyer, Plaintiff Speedware Motorsports ("Speedware"), and the seller, RIS. Two agreements are implicated in this dispute: (1) the April 2005 Master Agreement ("Master Agreement"), Mot. to Compel Arbitration, at Ex. A; and (2) the August 2005 Letter Agreement ("Letter Agreement"), Compl., docket no. 1, at 9. The Master Agreement involved Speedware's purchase of software licences, computer hardware, and installation and training services from RIS. The Master Agreement includes mediation and arbitration provisions.

ORDER  -1-

The parties entered into the Letter Agreement following a dispute over the software, hardware, and services provided under the Master Agreement. Speedware informed RIS that the software lacked essential functionality and did not meet Speedware's needs or expectations. Believing that RIS had misrepresented the capabilities of the software during the sales process and contract negotiations, Speedware sought to return the software to RIS, contested its 50 percent deposit payment with its credit card company, and refused to pay RIS the balance due under the Master Agreement. At that point, the parties entered into negotiations to resolve the dispute. The Letter Agreement represents the outcome of those negotiations.

Under the Letter Agreement, RIS agreed to "exchange" the software licenses purchased under the earlier Master Agreement for licenses of a new software package. Compl., at 9. RIS also agreed to provide installation and training services related to the new software, and agreed to "refund all monies minus [$2,500]" in the event that Speedware determined that the new software did not perform or meet Speedware's needs within a one-month trial period. In exchange for RIS's commitments under the Letter Agreement, Speedware agreed to pay the amount due under the Master Agreement ($18,472.50). The Letter Agreement does not include mediation or arbitration provisions.

**DISCUSSION**

The Federal Arbitration Act ("FAA") applies to an arbitration clause that is a "written provision in . . . a contract evidencing a transaction involving commerce." 9 U.S.C. § 2 (2006). The FAA provides for a stay of the trial of an action brought in a federal court on an issue referable to arbitration pursuant to a written arbitration agreement. 9 U.S.C. § 3 (2006). Under the FAA, the Court may not exercise its discretion but instead *shall* direct the parties to arbitrate issues as to which an arbitration agreement has been signed. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). Courts conduct a two-prong analysis under the FAA, determining: "(1) whether a valid agreement to arbitrate exists

ORDER  -2-

1  and, if it does, (2) whether the agreement encompasses the dispute at issue." Id. If both
2  prongs are answered affirmatively, then the FAA requires that courts enforce the arbitration
3  agreement. Id. Where the parties do not challenge the validity of an arbitration agreement,
4  "the FAA restricts [the Court's] review to deciding only whether the dispute is arbitrable,
5  that is, whether it falls within the scope of the parties' agreement to arbitrate." Id. at 1131.
6  "Any doubts concerning the scope of arbitrable issues should be resolved in favor of
7  arbitration." Id. (internal quotation omitted).
8  　　　In this case, the parties do not dispute the validity of the underlying arbitration clause
9  in the Master Agreement. Based on the nature of the original dispute, and the resolution of
10 that dispute as memorialized in the Letter Agreement, the Court concludes that the Master
11 Agreement's arbitration provision encompasses the claims at issue in this litigation. See
12 Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 781 (10th Cir. 1998) (a
13 dispute "arises under" a previous contract if it "involve[s] rights which to some degree have
14 vested or accrued during the life of the contract and merely ripened after termination," or
15 "relate[s] to events which have occurred at least in part while the agreement was still in
16 effect." ). The Court further concludes that the Letter Agreement did not negate the Master
17 Agreement's arbitration clause "expressly or by clear implication." Id. Under the FAA, the
18 Court is required to direct the parties to arbitrate the issues in accordance with the Master
19 Agreement. Chiron, 207 F.3d at 1130.
20 **CONCLUSION**
21 　　　The Court GRANTS Defendant's motion to compel arbitration and stay litigation
22 pursuant to 9 U.S.C. § 3, docket no. 3.
23 　　　IT IS SO ORDERED.
24 　　　DATED this 29th day of March, 2006.
25
26 　　　　　　　　　　　　　　　　　　　　　　　/s/ Thomas S. Zilly
　　　　　　　　　　　　　　　　　　　　　　　Thomas S. Zilly
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

ORDER  -3-